Filed 6/5/13  P. v. Nusser CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037479 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1092417) |
| v. | |
| ALAN NUSSER, | |
| Defendant and Appellant. | |

A jury convicted defendant Alan Nusser of second degree robbery.  The trial court suspended imposition of sentence and placed defendant on probation with a condition that he serve 10 months in jail.  On appeal, defendant contends that (1) the trial court erred by excluding evidence of third-party culpability, and (2) he received ineffective assistance of counsel.  We disagree and affirm the judgment.

BACKGROUND

On New Year's Eve 2009, Soon Ta Lee parked her car in a Bank of America parking lot near where defendant was sitting inside a parked car.  When Lee exited her car, she saw defendant exit his car.  Lee walked around to the passenger side of her car, retrieved a bag from the front seat, and began walking toward the bank.  She then noticed "somebody was coming from [her] back."  She tried to look back, but "was hit on [her] shoulder so that he [could] grab [her] bag."  Defendant then hit her bag with his hand and grabbed it.  Lee leaned forward to counteract the pulling, but defendant ultimately twisted her arm, pulled the bag from her, and ran back to his car.  He entered the rear driver side

passenger door, and the driver drove off. A witness noted the license plate number and called 911. Police responded to the bank, and Lee described defendant to them as a clean-cut "half white" male about 25 years old wearing suspenders and a white hat.

Police officers traced defendant's vehicle to a nearby residence and surrounded the house. At some point, defendant's mother exited the house carrying an infant. She told the officers that her two sons and Jose Arreola were in the house. She gave the officers her sons' cell phone numbers. The officers called the numbers and announced that the police were investigating a crime and requiring the people inside the residence to come outside. They also used a patrol car public address system to announce the same. When convinced that the occupants were not exiting, they fired batons into three different windows. Defendant exited. His brother and Arreola followed. When defendant passed his mother on the way to a patrol car, he remarked, "Sorry, mom."

The police compiled a photo line-up of six photographs that included defendant's photograph, and Lee identified defendant as the man who grabbed her bag to "[a]lmost 80 percent" certainty. When the police showed Lee another photo line-up that included defendant's brother, Lee did not identify anyone.

Lee identified defendant at the preliminary hearing as the man who grabbed her bag to the same 80 percent degree of certainty. Shortly before Lee testified at trial, a police detective showed Lee a photo line-up that included Arreola's photograph and Lee identified Arreola as the man who grabbed her bag. At trial, Lee identified defendant as the man who grabbed her bag and explained that she thought that Arreola's photograph looked similar to defendant's photograph and the two photographs were of the same person.

In his defense, defendant relied upon Arreola's appearance, about which a police officer opined was at least half-Hispanic.[1] He argued that Lee had misidentified defendant. He began as follows: "What do you do with the testimony given to you by Soon Ta Lee? No question about it, she was robbed. [The prosecutor] is right in that respect. Whatever it was, whoever did it, robbed Ms. Lee. No question. [¶] You don't have to go through the elements. You don't have to worry about was it a taking, was there force, was it against the will, was it criminal. I agree what happened out there on December 31st, 2009 . . . was a robbery. Okay. That's not an issue that you have to consider. It was not a grand theft person. It was a robbery. Up or down, that's what it was. The question is, who did it." He then urged that Lee's 80 percent certainty did not constitute certainty beyond a reasonable doubt. And he pointed out that Lee had once identified Arreola as the perpetrator. He continued: "The only thing that has been proved in this case is that Ms. Lee was robbed. That was proved beyond a reasonable doubt. Who did it has not been. I submit to you, ladies and gentlemen, that the question as to who robbed Ms. Lee, whether that has been proved beyond a reasonable doubt, the only reasonable conclusion that you can come to is a resounding no, that has not been proved beyond a reasonable doubt." He then cast doubt upon the reliability of Lee's identification by noting evidentiary inconsistencies and Arreola's closer resemblance to a Hispanic male than defendant's resemblance to a Hispanic male.

## THIRD-PARTY CULPABILITY EVIDENCE

During trial, defendant learned that Arreola had been arrested for a robbery committed near the same Bank of America branch on Valentine's Day 2010. The trial

---

[1] The original police dispatch described the suspect as a Hispanic male adult. Lee later told the investigating officers that the suspect was half white and the police updated the description to say mixed decent.

court granted defendant a continuance to review the police report and consider whether to make a motion to admit any evidence arising from Arreola's arrest.

Defendant later made a motion "to introduce the fact of ARREOLA's arrest and being a charged defendant in that still pending criminal case" "of a robbery, kidnapping, and assault with a deadly weapon . . . behind the very same Bank of America branch . . . ." He argued that he had a federal constitutional right to proffer evidence that other persons may have committed the crime.

The People countered that the proffered evidence did not constitute third-party culpability evidence because the charge against Arreola did not link him to the robbery of Lee. They also posed that defendant was essentially seeking admission of character evidence prohibited by Evidence Code section 1101, subdivision (a)[2] (character evidence in the form of specific instances of a person's conduct is inadmissible when offered to prove the person's conduct on a specific occasion), and not excepted from that prohibition on the issue of identity by section 1101, subdivision (b) (character evidence that a person committed an act is admissible when offered to prove a fact other than disposition to commit the act such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or sex-case defendant's unreasonable belief that victim consented).[3] They finally urged that, if admissible, the evidence should be excluded under section 352 (exclusion of evidence if probative value is substantially outweighed by probability that admission will necessitate undue

---

[2] Further statutory references are to the Evidence Code.

[3] The People acknowledged that the evidence was arguably admissible under section 1101, subdivision (b), because identity was in issue in this case and similar-act evidence is admissible to prove identity. But they pointed out that the acts underlying Arreola's arrest and the robbery of Lee bore no similarity--the police report described Arreola's victim as Arreola's creditor of a gambling debt who met Arreola behind a Quality Inn and went into a shack with Arreola and an accomplice to gamble where defendant and the accomplice beat the victim and took the victim's ATM card.

4

consumption of time or create substantial danger of undue prejudice, confusion of issues, or misleading the jury) because there was no probative value in the mere fact of an arrest, proving the underlying facts would necessitate a trial within a trial and consume an undue amount of time, and the evidence was prejudicial to the extent it would allow the jury to assume that Arreola robbed Lee because he was later arrested for robbery in the same area.

The trial court denied defendant's motion. It explained its ruling at sentencing: "Let me turn to the next issue, and that was the defendant's motion and request to introduce evidence of the arrest and prosecution of Jose Arriola [*sic*] for robbery and other offenses. . . . [¶] I did read the briefs. And, again, just to clarify, I believe I clarified this at the oral argument on the motion, but on page 2 of the defendant's brief the defense said that during periods of in limine the defense requested that Mr. Arriola [*sic*] be allowed to be exhibited to Ms. Lee as she testified. The court took that matter under submission for later decision. But actually the court did not take that matter under submission. It was understood that Mr. Arriola [*sic*] could be produced at trial. And after the People conducted a photo lineup, the defense withdrew their request to have Mr. Arriola [*sic*] to be produced at trial. [¶] I did review the briefs and the materials cited, and as I informed counsel at the appropriate time, I did deny the defendant's request to introduce that evidence concerning Mr. Arriola's [*sic*] arrest and prosecution. I made clear that the defense could argue that Mr. Arriola [*sic*] was, in fact, the perpetrator of this crime under the standards set forth in the cases . . . and that was based on the existing evidence admitted at trial and the victim's identification concerning Mr. Arriola's [*sic*] photograph. [¶] However, the issue in this motion was the admissibility of the additional evidence concerning Mr. Arriola [*sic*] to support the claim that Mr. Arriola [*sic*] committed this robbery. The defense did not attempt to justify the introduction of that evidence under Evidence Code section 1101. The evidence was still excluded under-- covered by section 1101[, subdivision] (a), and the defense did not even attempt to justify

5

the admission of the evidence under section 1101[, subdivision] (b) under any of the exceptions there to prove any of those relevant issues. [¶] . . . [¶] In addition to the fact that the defense did not support the admissibility of the conduct under section 1101, I would have also, as an alternative basis, would have excluded the evidence under section 352. Again, I would have found, and I did find that the evidence sought to be admitted any probative value was substantially outweighed by the probability that the admission would necessitate the undue consumption of time and would create a substantial issue of prejudice or confusing the issues or misleading the jury. [¶] As I explained to counsel, the defense could certainly argue, again, that Mr. Arriola [*sic*] was a perpetrator of this crime . . . based on the existing evidence, but I did exclude the other evidence and prosecution of Mr. Arriola [*sic*]."

Defendant contends that the trial court erred in finding that evidence of the Valentine's Day robbery was inadmissible under section 352. There is no merit to this point.

As is apparent from our lengthy recount of the Valentine's Day robbery background, (1) defendant sought admission of that evidence as third-party culpability evidence under federal constitutional principles, (2) defendant did not seek admission of the evidence as character evidence on identity that caused the People to formally invoke section 352 as a bar to admission, and (3) the trial court made no ruling grounded on section 352. As to this latter point, it is crystal clear that the trial court did no more than opine that it would have excluded the evidence under section 352 had defendant sought admission under section 1101, subdivision (b). Defendant concedes as much in his recount of the trial court's remarks ("the trial court indicated that it would nonetheless have excluded the evidence under Evidence Code section 352"). Because the trial court made no ruling under section 352, we have no occasion to determine whether the trial court erred in making a ruling under section 352. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.)

6

## INEFFECTIVE ASSISTANCE OF COUNSEL

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) That right "entitles the defendant not to some bare assistance but rather to *effective* assistance." (*Ibid.*) But the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." (*Yarborough v. Gentry* (2003) 540 U.S. 1, 8.)

"To establish constitutionally inadequate representation, a defendant must demonstrate that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1058; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.) 'When a defendant on appeal makes a claim that his counsel was ineffective, the appellate court must consider whether the record contains any explanation for the challenged aspects of representation provided by counsel. "If the record sheds no light on why counsel acted or failed to act in the manner challenged, 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' [citation], the contention must be rejected." ' " (*People v. Samayoa* (1997) 15 Cal.4th 795, 845.)

Defendant bears a burden that is difficult to carry on direct appeal. (*People v. Lucas* (1995) 12 Cal.4th 415, 436.) Our review is highly deferential; we must make every effort to avoid the distorting effects of hindsight and to evaluate the challenged conduct from counsel's perspective at the time. (*In re Jones* (1996) 13 Cal.4th 552, 561; *Strickland v. Washington*, *supra*, 466 U.S. at p. 689.) In evaluating whether trial counsel's representation was deficient "we accord great deference to the tactical

7

decisions of trial counsel in order to avoid 'second-guessing counsel's tactics and chilling vigorous advocacy by tempting counsel "to defend himself [or herself] against a claim of ineffective assistance after trial rather than to defend his [or her] client against criminal charges at trial." ' " (*In re Fields* (1990) 51 Cal.3d 1063, 1069.) A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance. (*Strickland v. Washington*, *supra*, at p. 689; *People v. Hart* (1999) 20 Cal.4th 546.) The burden is to establish the claim not as a matter of speculation but as a matter of demonstrable reality. (*People v. Garrison* (1966) 246 Cal.App.2d 343, 356.) As to failure to object in particular, "[a]n attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel." (*People v. Kelly* (1992) 1 Cal.4th 495, 540.) This is the case especially when trial counsel might reasonably have concluded that an objection would be futile. (*People v. Price* (1991) 1 Cal.4th 324, 387.)

Defendant complains about three asserted derelictions.

The first instance is defense counsel's failure to move in limine to exclude the consciousness-of-guilt evidence (defendant's delay in exiting the residence in response to the police and the "Sorry, mom" statement). According to defendant, defense counsel should have sought to exclude the evidence under the authority of section 352 because the evidence of delayed exit was minimally probative given that he had no duty to exit his home in the absence of a warrant and the evidence of his apology to his mother was minimally probative because he could have been apologizing for the police who had shot out the windows. Defendant continues that proving the manner of his arrest consumed an undue amount of time and was prejudicial because it allowed an "implied showing of consciousness of guilt." Defendant's analysis is erroneous.

We emphasize that this issue does not concern the admissibility of evidence. The consciousness-of-guilt evidence was admitted without objection--the trial court did not exercise discretion and make a ruling. We therefore decline to follow defendant's lead

8

and review an evidentiary ruling that the trial court did not make. Defendant's point instead concerns whether trial counsel had reason to refrain from objecting and, if not, whether the failure to object subjected defendant to prejudice. Thus, defendant must necessarily demonstrate at the threshold that the trial court would have sustained his objection (granted his in limine motion)--as a matter of law--had trial counsel made one. This follows because failure to make such a showing is a concession that (1) the trial court could have ruled either way on the objection, and (2) trial counsel could have therefore reasonably concluded that an objection would be futile.

As is apparent, defendant's argument is no more than a reargument about a discretionary matter rather than a demonstration that the trial court would have been compelled to grant the supposed in limine motion as a matter of law. Moreover, his assertion that the consciousness-of-guilt evidence was prejudicial because it allowed the jury to infer consciousness of guilt not only concedes the evidence's significant probative value and the concomitant futility of objecting to its admission but also demonstrates his failure to grasp section 352 principles. In applying section 352, "prejudicial" is not synonymous with "damaging." It refers to evidence that uniquely tends to evoke an emotional bias against the defendant as an individual with very little effect on the issues. (*People v. Doolin* (2009) 45 Cal.4th 390, 439.)

The second instance is defense counsel's failure to seek admission of the Valentine's Day robbery under section 1101, subdivision (b).

Again, in this context, defendant's burden is necessarily to show that, had trial counsel sought admission on section 1101 grounds, the trial court would have been compelled to admit the evidence. And, again, there is no question that defendant fails to make the necessary showing given that (1) one could rationally view the Valentine's Day robbery as inadmissible under section 1101 because it was dissimilar to the New Year's Eve robbery (*ante*, fn. 3), and (2) the trial court actually supposed that the evidence was admissible on section 1101 grounds but expressed that it would, in that event, exclude the

9

evidence under the authority of section 352 because of its limited relevance and obvious potential for delay and confusion.

The third instance is defense counsel's concession that Lee was robbed (force was used) despite that (1) defendant was also charged with the lesser included offense of grand theft, (2) the magistrate did not hold defendant to answer for robbery, and (3) "the evidence at trial did not reliably show force."

While "a defense attorney's concession of his client's guilt . . . can constitute ineffectiveness of counsel," there may be times when it would be a reasonable trial tactic to " 'adopt[] a more realistic approach' " and concede some facts. (*People v. Gurule* (2002) 28 Cal.4th 557, 611, 612.) There is a strong presumption that counsel's actions were based on sound trial strategy, even when counsel concedes some degree of guilt. (*People v. Freeman* (1994) 8 Cal.4th 450, 498.)

In this case, there is a plausible tactical explanation for trial counsel's decision to concede that there was a robbery. The evidence of force was strong, if not overwhelming. Defendant hit Lee in the shoulder. He hit Lee's bag. He twisted Lee's arm. This was no simple purse snatching. On the other hand, Lee's identification of defendant was arguably equivocal and problematic. Under the circumstances, defense counsel could have taken a realistic approach to focus on the mistaken-identity defense-- where he could question Lee's recollection--instead of the lack-of-force defense--where he would of necessity have to accuse Lee of lying about being hit and twisted. He could have reasonably concluded that challenging the force evidence would have presented a risk of alienating the jury, potentially resulting in a rejection of the mistaken-identity defense. (See *People v. Hart*, *supra*, 20 Cal.4th at p. 631.)

The California Supreme Court has rejected ineffective assistance of counsel claims in similar cases, holding that partial concessions of culpability may be a legitimate tactical choice by defense counsel where the incriminating evidence is strong. (See *People v. Hart*, *supra*, 20 Cal.4th at p. 631; *People v. Bolin* (1998) 18 Cal.4th 297, 334-

10

335; *People v. McPeters* (1992) 2 Cal.4th 1148, 1186-1187; *People v. Wade* (1988) 44 Cal.3d 975, 988; *People v. Ratliff* (1986) 41 Cal.3d 675, 697; *People v. Jackson* (1980) 28 Cal.3d 264, 292-293.)  Under these authorities, we conclude that defense counsel was not ineffective for conceding the element of force as to the robbery count.

Defendant's claims of ineffective assistance of counsel therefore fail.

<u>DISPOSITION</u>

The judgment is affirmed.

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.

11